MASSACHUSETTS SCHOOL OF LAW
AT ANDOVER, INC., Plaintiff,

v.

AMERICAN BAR ASSOCIATION (An Unincorporated Association Existing Until December 7, 1992), American Bar Association (An Incorporated Trade Association Existing Since December 7, 1992), The Association of American Law Schools, New England School of Law, James P. White, Steven Smith, Peter Winograd, Richardson W. Nahstoll, Rennard Strickland, Jose Garcia–Pedrosa, John E. Ryan, Claude R. Sowle, Frank W. Walwer, Pauline A. Schneider, Erica Moeser, Rudolph C. Hasl, Henry Ramsey, Jr. and Diane Yu, Defendants.

Civil Action Nos. 95–12320,
95–12321 and 95–12356.

United States District Court,
D. Massachusetts.

Jan. 18, 1996.

Peter M. Malaguti, Massachusetts School of Law at Andover, Inc., Michael L. Coyne, Andover, MA, for Massachusetts School of Law at Andover, Inc.

Vincent M. Amoroso, Peabody & Arnold, Boston, MA, for Ass'n of American Law Schools.

Cynthia H.N. Post, James R. DeGiacomo, Roche, Carens & DeGiacomo, Boston, MA, for New England School of Law.

Joseph L. Kociubes, Jonathan M. Albano, Peter J. Mancusi, Bingham, Dana & Gould, Boston, MA, for American Bar Ass'n, The Ass'n of American Law, New England School of Law, James P. White, Steven Smith, Peter Winograd, Richard W. Nahstoll, Rennard Strickland, Jose Garcia–Pendrosa, John E. Ryan, Claude R. Sowle, Frank K. Walwer, Pauline A. Schneider, Erica Moeser, Rudolph C. Hasl, Henry Ramsey, Jr., Diane Yu.

LASKER, District Judge.

The Massachusetts School of Law ("MSL") brought this action in the Essex Superior Court of Massachusetts. The defendants removed to this court, under the provisions of 20 U.S.C. § 1099b(f), The Higher Education Act, which reads:

> Notwithstanding any other provision of law, any civil action brought by an institution of higher education seeking accredita-

tion from, or accredited by, an accrediting agency or association approved by the Secretary for the purpose of this subchapter and part C of subchapter I of chapter 34 of Title 42 and involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court.

MSL now moves to remand pursuant to 28 U.S.C. § 1447(c), arguing that the case was improperly removed to this court because the plaintiff is not an "institution of higher education" within the meaning of 20 U.S.C. § 1099b(f).

MSL's argument runs as follows: The term "institution of higher education" appears in the "Definitions" section of the statute at 20 U.S.C. § 1141(a). That section defines an "institution of higher education" as an educational institution in any State which, among other criteria not in dispute, "is accredited by a nationally recognized accrediting agency or association, or if not accredited, is an institution that has been granted preaccreditation status, and the Secretary has determined that there is satisfactory assurance that the institution will meet the accreditation standards of such an agency or association, within a reasonable time."

MSL contends that it is not an "institution of higher education" as defined in the Act because it is not "accredited by a nationally recognized accreditation agency or association" nor is it "an institution that has been granted preaccreditation status by such an agency or association that has been recognized by the Secretary for the granting of preaccreditation status."

The defendants do not dispute that MSL has not been accredited nationally nor granted preaccreditation status. They argue that MSL's position is, nevertheless, incorrect because, if the statutory term "institution of higher education," as defined in 20 U.S.C. § 1141(a) were held to control throughout the statute, such a construction would render superfluous the inclusion in § 1099b(f) of the reference to "institution[s] of higher education *seeking accreditation from,* or accredited by an accrediting agency" and which

have claims *"involving the denial, withdrawal or termination of accreditation."* (emphasis added).

These arguments present two questions: (1) Is the case at hand one of an institution "seeking" or "involving the denial of accreditation"? (2) If so, what is the proper reconciliation of the language of § 1141(a) and the language of § 1099b(f)?

▉ The defendants contend that the case at hand is one "involving the denial—of accreditation." MSL contends that the case does not involve the denial of accreditation, but rather, that it is a suit under state law alleging only claims of unfair competition, fraud and deceit, tortious misrepresentations and breach of contract. The causes of action in the complaint do in fact specify only such claims. However, those designations are not controlling in determining whether the case is one involving the denial of accreditation within the meaning of § 1099b(f), and even a cursory examination of the complaint clearly establishes that the suit does "involve denial" of accreditation. Indeed, the very first paragraph of the complaint includes the sentence: "The complaint is based on unfair actions taken by defendants (1) to deny accreditation to MSL." and the plaintiff's Memorandum in Support of this very motion states, "The complaint, citing evidence, demonstrates that the ABA and the AALS as individual defendants conducted the accreditation process regarding MSL in an arbitrarily, procedurally improper and inconsistent manner, etc." I conclude that, construing the term "involving the denial of accreditation" in accordance with normal usage, the case at hand does "involve" such a denial.

▉ There remains, nevertheless, the question of how to reconcile the facially conflicting language of §§ 1141(a) and 1099b(f) with regard to the definition of "an institution of higher education." The plaintiff argues that § 1141(a) trumps § 1099b(f) because § 1141(a) is specified by title as the "Definitions" section of the statute and that, in statutory construction cases, the definitions so established control the meaning of statutory terms throughout the statute. There is logic to this argument, of course, but in the case at hand there is also a

weakness, because if the § 1141(a) definition controls throughout the statute, it would render superfluous the language of § 1099b(f) which refers to an institution of higher education *"seeking accreditation* from or accredited by, an accrediting agency, association . . . and *involving the denial, withdrawal or termination of accreditation."* (emphasis added).

The defendants argue that the only way to avoid rendering superfluous the § 1099b(f) language quoted immediately above is to conclude that Congress did not intend that § 1141(a)'s definition of an institution of higher education should limit the definition specified in § 1099b. The defendants supplement their "superfluity" argument by pointing out that other subparts of § 1099b use the term "institution of higher education" in reference to unaccredited first-time applicants. For example, § 1099b(c)(6) requires an accrediting agency to disclose whenever an "institution of higher education . . . is being *considered* for accreditation;" and § 1099b(a)(8) requires the accrediting agency to make available to the appropriate governmental entity in the State "in which the institution of higher education is located a summary of *any final denial, termination or suspension of accreditation."* (emphasis added). Moreover, the United States Department of Education, the agency charged with implementing the statute at issue, has recognized that the term "institution of higher education" has different meanings depending on the context. Thus, in the matter of eligibility for federal student aid, 34 C.F.R § 600.4 provides that the institution must either be "accredited or preaccredited." However, when defining the institutions subject to review by accrediting agencies, such as the ABA, 34 C.F.R § 602.2 states that an "Institution of higher education or institution means an educational institution that qualifies *or may qualify* as an eligible institution." (emphasis added).

▉ I conclude that the defendants have the better of the argument because their construction of the statute permits both §§ 1141(a) and 1099b(f) to operate and have meaning, whereas the plaintiff's construction

would truncate the meaning of the language contained in § 1099b(f). *See generally Pilot Life Ins. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987) ("in expounding a statute, [courts] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy"); *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955) (courts should "give effect, if possible, to every clause and word of a statute"). Accordingly, I conclude that the statute should be read to provide that, for purposes of litigation, a program that does not meet the definition found in § 1141(a) solely because it is *awaiting* accreditation, nonetheless meets the definition of § 1099b(f) if it involves the *denial* of accreditation.

■ Shortly before oral argument, MSL amplified its motion by contending that because MSL does not seek or accept federal monies for itself or in payment of its tuition, and that even if it were accredited, it would continue not to seek or accept federal monies for itself or in payment of tuition, the Act does not apply to it.

MSL contends that, because § 1099b(f) and the other 1992 Amendments were enacted on account of Congressional concern over waste and loss of federal monies, Congress did not intend that a school like MSL, which seeks no federal funds and therefore "poses no threat to the federal fisc," should be covered by the Act. It adds that in 1992 Congress deliberately narrowed the definition of an "institution of higher education"; that a major concern of Congress was to prevent poor quality schools threatened with loss of accreditation from protecting themselves against such loss by endless litigation, and, finally, that, under the ruling of the Supreme Court in *United States v. Lopez,* ─── U.S. ───, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), there is no constitutional basis for the exercise of federal power over a school not receiving federal monies.

The arguments are unpersuasive. First, although there is no question that the present MSL policy opposes the acceptance of federal funds, MSL is not bound by its charter or otherwise from accepting them hereafter. More significantly, however, a study of the Senate Report relating to the 1992 Amendments and the materials supporting the report leads to the conclusion that Congress intended that § 1099b(f) jurisdiction should apply even to an institution not accepting federal funds. Indeed, the Subcommittee concluded that "the [federal student aid] program had failed" and "that the mechanism on which ... oversight depends—the triad of licensure, accreditation, and certification/eligibility—provide little or no assurance that schools are educating students efficiently and effectively." *See Report on Federal Student Aid Programs Made by the Permanent Subcommittee on Investigations of the Committee on Government Affairs U.S. Senate, (April 25, 1991),* at 33. Accordingly, the Subcommittee recommended, among other things, that accrediting bodies "dramatically improve their ability to screen out substandard schools, or the government should cease to rely on them." *Id.* at 34. In sum, Congress wished to create a comprehensive structure for controlling not only the expenditure of funds, but also the probity of the accreditation system. Thus, based on the problems documented in the Senate Report, it is reasonable to assume that Congress intended to exercise as complete control of the accreditation system as it was constitutionally authorized to do.

Moreover, the analogy to *United States v. Lopez* is misplaced. In *Lopez,* a student was criminally charged with violating an Act of Congress which forbade anyone from possessing a firearm at a place he knew to be a school zone. The Court held that the Act in question exceeded Congress' authority under the Commerce Clause because possession of a firearm in such circumstances was not an economic activity which had the requisite substantial effect on interstate commerce. Here, we are dealing with a vast and sprawling educational network to which the government allocates many billions of dollars a year and as to which Congress has emphatically indicated its purpose of asserting effective control.

For the reasons stated, the motion to remand is denied.