**WESTERN STATE UNIVERSITY OF SOUTHERN CALIFORNIA, d/b/a Western State University College of Law, et al., Plaintiffs,**

v.

**AMERICAN BAR ASSOCIATION, Defendant.**

**No. SA CV 04–51–GLT.**

United States District Court, C.D. California, Southern Division.

Feb. 6, 2004.

Donald A. Daucher, Tracey L. DeLange, Paul Hastings Janofsky & Walker, San Diego, CA, for Plaintiffs.

Anne E. Rea, David T. Pritikin, Michael P. Doss, Sidley Austin Brown & Wood, Chicago, IL, Bradley H. Ellis, Sidley Austin Brown & Wood, Los Angeles, CA, for Defendant.

## ORDER GRANTING PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

TAYLOR, District Judge.

Until the matter can be decided on the merits, the Court issues an order to preserve the status quo, preliminarily enjoining the ABA from implementing any final decision to withdraw Western State's provisional accreditation or remove Western State from the list of approved law schools.

### I.  BACKGROUND

In 1998, Defendant American Bar Association granted provisional approval to Plaintiff Western State University of Southern California d/b/a Western State University College of Law. Provisional approval requires the school to (1) be in "substantial compliance" with ABA's standards and (2) present a reliable plan for coming into full compliance with the ABA's standards within three years.  ABA STANDARDS FOR APPROVAL OF LAW SCHOOLS, STANDARD 102(a).  A law school had a total of five years in

which to qualify for full approval, which requires "full compliance" with the ABA standards. STANDARDS 102(b) and 103(a). The five-year provisional approval period may be extended "[i]n extraordinary cases and for good cause ...." STANDARD 102(b). Western's five-year provisional approval was to expire in August 2003.

In March 2002, Western notified ABA of its intent to seek full approval. After visiting the school and affording Western an opportunity to be heard, the ABA Accreditation Committee concluded the school had not "made satisfactory progress toward achieving full approval, nor implemented a reliable plan for bringing the school into full compliance with the [ABA] Standards." Defendants' Exhibit ("DX") 3 at 215.

In June 2003, after affording Western an opportunity to be heard, the ABA Council of the Section of Legal Education and Admissions to the Bar issued a letter concurring with the Accreditation Committee that Western should not be granted full approval. DX 4 at 220–21. Although the time for Western's provisional approval had not yet run out, the Council notified Western the school had not demonstrated "good cause" or an "extraordinary case" to justify extending its provisional approval beyond five years. *Id.* at 221. The ABA provided the school an opportunity to show cause to both the Accreditation Committee and the Council, in November 2003 and December 2003 respectively, why its provisional approval should not expire and it should not be removed from the list of ABA-approved law schools. *Id.*

At the ABA's request, Western submitted its material to the Committee approximately five weeks before its November 7 meeting. On November 19, 2003, having not yet received a written report from the Committee, Western requested a postponement of the Council's December 5 meeting because it contended the time between the Committee meeting and the Council meeting was impermissibly and unfairly short under the ABA RULES OF PROCEDURE FOR THE APPROVAL OF LAW SCHOOLS numbers 5 and 7. DX 9. On November 20, 2003 the ABA responded that Rule 6[1] governed the proceeding, so "there is nothing to appeal" and no specific time frame bound the ABA. Plaintiffs' Exhibit ("PX") 19. On November 21, 2003, the Committee transmitted to Western a report entitled "The Action of the Accreditation Committee," in which the Committee determined Western was not in compliance with the ABA standards, and Western had not demonstrated it was an extraordinary case. DX 6 at 232–33. The Committee recommended Western be removed from the list of ABA-approved law schools. *Id.* at 233.

The timing of the Committee's written report left the Council one day to review the Committee's report, Western's written appeal, and new evidence Western sought to present.

On December 11, 2003, the Council concurred with the Accreditation Committee and notified Western the Council had adopted a motion to withdraw provisional approval. DX 7 at 307–08. In its letter, the Council informed Western the matter would be submitted to the ABA House of Delegates at its meeting on February 9–10, 2004. *Id.* at 308.

On December 19, 2003, within 30 days of the Committee's action letter and pursuant to ABA Rule 5, Western filed a request for reconsideration of the Committee's action letter. PX 13. The Council refused to

---

**1.** The text of Rules 5, 6 and 7 is reproduced in the Appendix at the end of this order. The text of House Rule 45.9, discussed below, is also reproduced.

accept Western's motion for reconsideration. PX 14.

On December 24, 2003, the ABA informed Western of its right to appeal the Council's action to the House pursuant to Rule 45.9 of the ABA RULES OF PROCEDURE OF THE HOUSE OF DELEGATES. PX 5. Western objected to the February date, contending it impermissibly and unfairly cut short the time frame under House Rule 45.9(c) for Western to file its appeal and respond to the Council's formal report. PX 7.

On January 9, 2004, the ABA recognized the time irregularity under Rule 45.9 and noted Western's appeal could not be automatically calendered at the February House meeting. PX 8. Instead, the House Rules and Calendars Committee must first recommend the calendaring of the appeal at its February 7–8, 2004 meeting, the days immediately before the full House meets. *Id.* If the appeal is recommended to be calendered, the House must approve the calendering of the item by a two-thirds vote. *Id.*

Pursuant to House Rule 45.9(c)(1), Western filed its appeal with the House on January 12, 2004. PX 23. In their letter, Western reiterated its concern that, if the House hears the appeal at its February meeting, Western will be denied its rights under Rule 45.9(c). *Id.*

Along with individual students Plaintiffs Michael Bender and Kerry Zeiler, Western filed suit against Defendant, claiming Defendant's failure to follow its rules and its animus toward Western violated the Higher Education Act, common law due process, the Administrative Procedures Act, the Fifth Amendment, and the Sherman Antitrust Act. Plaintiffs now apply for a preliminary injunction preventing Defendant from reviewing the Council's decision to withdraw provisional approval at the House of Delegates' February 2004 meeting. In their application, Plaintiffs claim three due process violations: (1) the Committee impermissibly failed to consider Western's reconsideration request; (2) the time allowed for Western's appeal to the Council was cut impermissibly short; and (3) the time allowed for Western's appeal to the House was cut impermissibly short. Defendant contends it has given Western ample notice and many opportunities to be heard.

The parties have further presented their positions at a hearing of this matter.

## II. *DISCUSSION*

■ Traditionally, in order to obtain a preliminary injunction, a moving party must demonstrate: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury if preliminary relief is not granted, (3) a balance of hardships favoring the moving party, and, in certain cases, (4) advancement of the public interest. *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir.1995). The Ninth Circuit also recognizes an alternative test, under which the moving party must demonstrate either: (1) probable success on the merits and the possibility of irreparable injury; or (2) the existence of serious questions on the merits [2] and the balance of hardships tipping sharply in its favor. *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir.2003) (citing *Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir.2003)).

---

**2.** "Serious questions" are those which are reasonable subjects of litigation and have some chance of success on the merits, though not necessarily a strong "likelihood." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 422 (9th Cir.1991) (citations omitted). They are questions "as to which the court perceives a need to preserve the status quo [to permit] resolution of the questions or execution of any judgment." *Id.*

The two parts of the alternative test are not entirely separate. Rather, "[t]his analysis creates a continuum: the less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor." *Id.* (citing *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1400 (9th Cir.1992)).

Plaintiffs have demonstrated serious questions on the merits of two of their claims, a possibility of irreparable harm if injunctive relief is not granted, and a balance of hardships tipping sufficiently in their favor. The Court also finds the public's interest in fair and prompt accrediting information will not be substantially harmed if the preliminary injunction is granted.

### A. *Likelihood of Success on the Merits*

Plaintiffs contend they have a strong likelihood of success on the merits for violations of (1) the Administrative Procedures Act ("APA"); (2) Fifth Amendment due process; (3) the Higher Education Act ("HEA"); and (4) common law due process. The Court finds there is insufficient likelihood of success on the first two claims, but "serious questions" on the merits of the third and fourth claims.

### 1. *Administrative Procedures Act*

■ Plaintiffs' APA claim has little likelihood of success. The APA allows judicial review for persons "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action," and defines "agency" as "each authority of the Government of the United States ...." 5

U.S.C. §§ 701(b)(1), 702. By its own language, the APA does not extend to an entity that is not a federal agency, such as the ABA. *See National Wildlife Federation v. Espy*, 45 F.3d 1337, 1344 (9th Cir. 1995) (holding non-agency defendants were properly joined as indispensable parties under Rule 19, but recognizing no APA cause of action could stand against them); *accord Sierra Club v. Hodel*, 848 F.2d 1068, 1077 (10th Cir.1988) ("We know of no cases explicitly permitting a private suit under § 702 against a nonagency defendant ....") *overruled on other grounds by Village of Los Ranchos De Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir.1992); *Hayne Blvd. Camps Preservation Ass'n, Inc. v. Julich*, 143 F.Supp.2d 628, 632 (E.D.La.2001) ("[The APA] does not provide a route through which plaintiffs can obtain injunctive relief against nonfederal defendants.") (citing *Vieux Carre Property Owners, Residents, & Assocs., Inc. v. Brown*, 875 F.2d 453, 456 (5th Cir.1989)).[3]

### 2. *Fifth Amendment Due Process*

■ "The United States Constitution protects individual rights only from *government* action, not from *private* action. Only when the *government* is responsible for a plaintiff's complaints are individual constitutional rights implicated." *Single Moms, Inc. v. Montana Power Co.*, 331 F.3d 743, 746–47 (9th Cir.2003) (citing *Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001)) (emphasis in original).

The Supreme Court has held challenged action by a private actor may be state action when: (1) the government com-

---

**3.** Plaintiffs' reliance on *Chicago School of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schools and Colleges*, 44 F.3d 447 (7th Cir.1994), is misplaced. The court stated, "We think that principles of federal administrative law supply the right perspective for review of accrediting agencies' decisions." 44 F.3d at 450. The court did not decide the issue of whether a private plaintiff could bring an APA claim against a private defendant.

pelled the action using its "coercive power" or provided "significant encouragement, either overt or covert," for the private action; (2) the government and the private actor willfully participated in joint activity; (3) the government controlled or was excessively intertwined with a nominally private actor; or (4) the government delegated a "public function" to the private actor. *Id.* at 747 (collecting cases).

■ Plaintiffs contend the third theory is present here because "the ABA's function as an accrediting agency is essentially controlled by the Department of Education, through the HEA and its implementing regulations." Plaintiffs rely on *Auburn Univ. v. S. Ass'n of Colleges & Schs., Inc.,* 2002 U.S. Dist. LEXIS 26478 (N.D.Ga.2002). However, Plaintiffs concede the Georgia district court in *Auburn University* did not reach the issue of whether an accrediting agency may be a "state actor" under the Fifth Amendment, and the case law does not support Plaintiffs' position. *E.g. Chicago School of Automatic Transmissions supra,* 44 F.3d at 449 n. 1 ("A governmental body may rely on the decisions of a private association without turning that association into 'the government' itself.") (citing *Sanjuan v. American Board of Psychiatry & Neurology, Inc.,* 40 F.3d 247, 250 (7th Cir.1994)); *Medical Institute of Minnesota v. National Ass'n of Trade and Technical Schools,* 817 F.2d 1310, 1314 (8th Cir.1987) ("[T]hat the DOE regulates the procedures to be used in deciding whether to accredit is not enough to compel a finding of governmental action."); *see also McKeesport Hosp. v. Accreditation Council for Graduate Medical Educ.,* 24 F.3d 519, (3d Cir.1994) ("In cases involving accrediting organizations ..., a number of courts have not found state action.... We have uncovered only one case where state action was found ....") (citations omitted).

There is insufficient showing the ABA is a state actor. Because the ABA is not shown to be a state actor, Plaintiffs cannot demonstrate sufficient likelihood of success on their Fifth Amendment due process claim.

3. *Higher Education Act*

Defendant first contends Plaintiffs are unable to demonstrate any likelihood of success on their HEA claim because no private right of action exists for violations of the HEA. At first glance, this argument seems convincing because "[t]here is no express right of action under the HEA except for suits brought by or against the Secretary of Education." *Parks School of Business, Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995) (citing 20 U.S.C. § 1082(a)(2)). As noted by the Eleventh Circuit, "nearly every court to consider the issue in the last twenty-five years has determined that there is no express or implied private right of action to enforce any of the HEA's provisions." *McCulloch v. PNC Bank Inc.,* 298 F.3d 1217, 1221 (11th Cir.2002) (collecting cases); *see also Parks,* 51 F.3d at 1485 (HEA provides no private right of action by school against lender).

However, these cases have not addressed the applicability of 20 U.S.C. § 1099b(f) of the HEA, which, under the heading "Jurisdiction," provides

any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association recognized by the Secretary ... and involving the denial, withdrawal, or termination of accreditation of the institution of higher education, shall be brought in the appropriate United States district court.

Citing the Georgia district court in *Auburn University, supra,* Plaintiffs contend the jurisdictional statement in § 1099b(f)

implies a private right of action by a school against an accrediting agency. While the district court in *Auburn* noted this section "is susceptible of an interpretation that the HEA would allow" a suit by a school against the accrediting agency, the issue was not reached.[4] 2002 U.S. Dist. LEXIS 26478, *48. The district court's language in *Auburn* is *dicta*, but it is helpful to consider it. If there were no right of action by Western, it could be argued, this section might be superfluous.

The cases Defendant cites are distinguishable because none involve suit by a school against an accrediting agency under § 1099b(f).

The Court does not now decide whether Plaintiffs may proceed under the HEA. For purposes of this preliminary injunction request, the issue is decided under the principle of common law due process.

### 4. Common Law Due Process

■ In the accreditation context, common law due process requires the accrediting body's decision not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or reached "without observance of procedure required by law." *Chicago School of Automatic Transmissions, supra,* 44 F.3d at 449–50 (quoting 5 U.S.C. § 706(2)(A), (D)); *accord Foundation for Interior Design Educ. Research v. Savannah College of Art & Design,* 244 F.3d 521, 528 (6th Cir. 2001). The Court's review is very deferential, but review includes the inquiry whether the accrediting body followed its own rules. *See Chicago School of Automatic Transmissions,* 44 F.3d at 450–51; *see*

*also Yesler Terrace Community Council v. Cisneros,* 37 F.3d 442, 448 (9th Cir.1994) (due process requires an agency to follow its own rules) (citing *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)).

■ Ordinarily, the Court defers to the agency's reasonable interpretations of its own rules. *See, e.g., Chicago School of Automatic Transmissions* at 450 ("In administrative law ... the first question is how the agency understands its own rules—for an agency possessed of the ability to adopt and amend rules also may interpret them, even if the interpretation chosen is not the one that most impresses an outside observer.") (citing *Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993)); *Foundation for Interior Design Educ. Research v. Savannah College of Art and Design,* 39 F.Supp.2d 889, 896–97 (W.D.Mich.1998) ("The Court defers to [the accrediting agency's] interpretation of its own rules .... Accrediting procedures are guides that, if construed by courts too strictly, would strip the accrediting bodies of the discretion they need to assess the unique circumstances presented by different schools.")

■ Defendant contends Plaintiffs' claim has no likelihood of success because Plaintiffs are unable to point to any substantive due process violations. At the hearing, Defendant contended Plaintiffs have been afforded several noticed opportunities to be heard on this issue since April 2003. Defendant also contended

---

4. This conclusion is supported by *Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,* 914 F.Supp. 688 (D.Mass. 1996), *aff'd* 142 F.3d 26 (1998), in which a law school denied accreditation by the ABA sued on a variety of tort theories. Citing the HEA's § 1099b(f), the ABA removed the action to federal court, contending the issue was

the denial of accreditation and not the alleged torts. 914 F.Supp. at 689. The court held removal was proper under this statute, but the issue of whether the action was proper under the HEA was not discussed. The ABA's position in *Massachusetts School of Law* appears contradictory to their position before this Court.

Western has waived any right to appeal by withdrawing its appeal to the House in November 2003. As correctly noted by Plaintiffs at the hearing, the issue of Western's application for full approval, not the withdrawal of provisional approval and the removal from the list of approved law schools, was the subject of both the Spring 2003 hearings and Western's withdrawn appeal. The issues are different and are governed by different rules.

From the recent deposition of John Sebert, the administrator of the ABA's law school accreditation process, it appears the ABA contends Western has no right to seek reconsideration and limited appeal rights of the Committee and Council decisions to withdraw provisional accreditation. *See Transcript of January 30, 2004 Deposition of John A. Sebert* at 33:5–35:2, 36:2–37:14, 59:14–61:14, 71:11–71:18, 144:23–145:8. Due process questions are raised by the one day period of review between Western's appeal to the Council and the hearing. These issues raise "serious questions" as to the denial of Western's due process right to a fair and effective appeal.

Plaintiffs also point to Sebert's deposition testimony to contend the ABA is changing the definition and usage of the terms "action" and "action letter," denying Western State a fair and effective appeal. *Sebert Depo.* at 18:3–19:22, 23:21–26:9, 54:10–55:23, 90:24–91:18, 94:4–94:23, 102:4–

102:21, 106:12–108:11, 123:22–124:6, 130:5–134:1, 137:2–137:6, 179:14–179:21. They contend the same is true of ABA's apparent view of Western's right to reconsideration and appeal. *See id.* at 33:5–35:2, 36:2–37:14, 59:14–61:14, 144:23–145:8, 155:17–156:8.[5]

This may show of a change in rule interpretation that harmed Western. For example, the ABA's rules provide a school may seek reconsideration and take an appeal from a "Committee Action Letter."[6] ABA RULES OF PROCEDURE FOR THE APPROVAL OF LAW SCHOOLS, RULES 5, 7. These rules provide a time line in which the school has 30 days to seek reconsideration from the Committee. *Id.,* Rule 5. If the Committee denies reconsideration, the school has 30 days to appeal that decision to the Council. *Id.,* Rule 7. In his deposition, however, Mr. Sebert testified a school may only appeal or seek reconsideration of an "action letter" which is a final decision, final judgment, or final action of the Committee, and the actions taken here were recommendations—not final actions. *Sebert Depo.* at 18:3–19:22, 23:21–26:9, 33:5–35:2, 36:2–37:14, 58, 94:4–94:23, 106:12–108:11. The rules appear to make no distinction between "final" action letters and other action letters,[7] and the correspondence items sent to Western were called "action letters."[8] It does not appear Western was informed of the this

5. Western appears, at least at this early stage, to have relied upon the ABA's own statements and a reasonable interpretation of the ABA's rules to its detriment. For example, Sebert testified that, although the ABA informed Western Rules 4 through 8 were applicable to their situation, the ABA actually meant that only Rule 6 applied. *Id.* at 135:2–136:11.

6. Rule 1 defines an "action letter" as "A letter transmitted by the Consultant to the president and dean of a law school reporting Committee or Council action." This broad definition appears to encompass all of the ABA correspondence at issue.

7. Sebert testified the term "action letter" is either improvidently used in certain rules or the term means different things in different rules and in different circumstances. *Sebert Depo.* at 94:4–94:23, 102:4–102:21, 106:12–108:11, 179:14–179:21. At this early stage, this interpretation of the Rules does not appear reasonable.

8. Some of the correspondence used language such as "letter on the Committee's action" or "letter on the Council's action," instead of "action letter." Given Rule 1's broad definition, the documents at issue appear to be "action letters."

fluid definition of "action letter" or its consequences. In addition, although Sebert testified there are matters in which the Committee has "primary jurisdiction" and matters in which the Council has "primary jurisdiction," *id.* at 47:17–48:23, 66:5–66:20, no distinction appears in the rules or was explained to Western.

The timing of Western's House Appeal is important. A school has only one opportunity to present an appeal to the House, so the need for procedural fairness is critical.[9]

House Rule 45.9(c) sets a time frame for appeals to the House in which the school has 30 days to file a notice of appeal of the Council's action. The Council thereafter has 15 days to deliver to the Secretary of the ABA its formal report stating its actions and its reasons for these actions. This report was apparently never filed. Western did not have a report to which to respond. The matter was scheduled for the February House meeting without presentation of the issues. This raises serious due process questions.

Defendant contends these claims cannot amount to a due process violation because Western has still been afforded an opportunity to be heard. At the hearing and in their papers, Plaintiffs detailed some of the harms arising from the shortening of the time frame: (1) the inability to file all of their materials, including new evidence; (2) the inability to fully address all aspects of the Committee's and Council's action letters; and (3) the inability to properly address factual errors in the Committee's action letter. Western is also harmed if the appellate bodies have neither sufficient time nor sufficient materials to make a fair and reasonable determination of the issue.

The question is not whether Western has had some opportunity to be heard, but whether Western has had a fair and effective opportunity to be heard.

These apparent inconsistencies and potentially unreasonable interpretations, coupled with the apparent failure to fully inform Western of the fluid rule definitions guiding Defendant, raise "serious questions" on the merits. Plaintiffs have offered evidence and arguments that indicate, at least at this early stage, the ABA may be failing to follow its own rules, thereby violating due process and precluding Plaintiffs' right to a fair and effective appeal. These matters remain to be litigated and are not decided now. The Court needs to preserve the status quo to permit resolution of these questions. *Gilder, supra,* 936 F.2d at 422.

B. *Irreparable Harm*

■ "Regardless of how the test for a preliminary injunction is phrased, the moving party must demonstrate irreparable harm." *American Passage Media Corporation v. Cass Communications, Inc.,* 750 F.2d 1470, 1473 (9th Cir.1985). A showing of irreparable harm is the "basis of injunctive relief" and a district court may not issue an injunction unless the moving party shows a risk of such harm. *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1202 (9th Cir.1980) (citations omitted).

■ Defendant contends Plaintiffs' claim of irreparable harm is too speculative because the House may or may not vote to withdraw Western's accreditation at its upcoming meeting. The harm if accreditation is withdrawn is real and sub-

---

9. The House cannot overturn the Council's decision to withdraw accreditation. Under the ABA House rules, "The House shall vote either to agree with the action of the Council or refer it back to the Council for reconsideration based on reasons specified by the House." ABA House Rule 45.9(a). Once the House has voted on this issue, the Council has final say on the issue; thus, a school has only one appeal to the House. *Id.*

stantial. Western need not wait for the axe to fall before seeking an injunction. The Court finds a sufficient possibility of irreparable harm if the preliminary injunction is not granted.

## C. *The Public Interest and the Balance of Hardships*

Defendant is correct that there is a strong public interest in having those who look to accrediting decisions receive prompt and accurate information. The injunction, Defendant contends, would mislead the public about Western's status. Western notes it has informed every applicant since June 2003 of its status before the ABA, providing applicants with the Council's June 2003 action letter. There is reduced harm to the public interest when applicants are fully informed.

The public's interest in prompt, fair and accurate accrediting information is not served if the accrediting agency does not observe a school's due process rights during the accreditation process. The Court finds the public interest is best served by issuing a preliminary injunction to preserve the status quo, and setting an early trial of the issue, provided Western continues to fully inform applicants and students of its current accreditation status and the status of these proceedings. Nothing prevents the ABA from also informing the public about these proceedings.

The balance of hardships tips sufficiently in Plaintiffs' favor at this early point. The loss of reputation and good will resulting from the loss of accreditation could be very damaging to a law school.

## III. *DISPOSITION*

A preliminary injunction is appropriate to maintain the status quo until the significant issues presented here can be litigated. The Court will not enjoin the House from voting on this issue. The ABA may continue with its normal process, if it wishes.

The Court will enjoin the ABA from implementing any final decision to withdraw Western State's provisional accreditation or remove Western State from the list of approved law schools.

The parties agree a bond is not necessary, and the Court will not require a bond.

As discussed at the hearing, the Court will advance and accelerate the litigation of this matter. The Court sets a status conference for February 13, 2004 at 10:00 A.M. to discuss the discovery and trial schedule.

Plaintiffs' application for a preliminary injunction is GRANTED.

## *PRELIMINARY INJUNCTION*

Pending further order of the Court, the ABA is enjoined from implementing any final decision to withdraw the provisional accreditation of Plaintiff Western State University College of Law, or remove it from the list of ABA-approved law schools. Western State is ordered to make full disclosure to students and applicants concerning the ABA's actions and these proceedings.

## *Appendix*

RULE 5. Accreditation Committee Reconsideration of Previous Action Taken.

(a) A law school may request Accreditation Committee reconsideration of a Committee Action Letter by filing a request for reconsideration with the Chair of the Committee. The request must be filed within 30 days after the date of the Accreditation Committee Action Letter.

(b) The Chair of the Accreditation Committee shall grant the request for reconsideration upon good cause shown. If the request is granted, reconsideration shall take place at the next regularly scheduled

meeting of the Accreditation Committee, if feasible.

(c) The record upon which the law school seeking reconsideration may proceed shall consist of the following:

(1) The record before the Committee at the time of its initial decision of the matter.

(2) The Committee Action Letter.

(3) The law school's request for reconsideration.

(4) Any new evidence upon which the request for reconsideration is based. Such new evidence must be submitted with the request for reconsideration and must be verified at the time of submission. Unverified new evidence will not be considered by the Committee.

(5) Examples of appropriate verification include (this is not an exclusive list):

(a) For a publicly supported law school, a copy of legislation verifying that the state legislature has included funding for a law school building project in a recently passed appropriations bill.

(b) A letter from a foundation officer verifying that funds have been deposited to the law school's account.

(c) A certificate of completion or occupancy issued by the appropriate governmental body, or other evidence of readiness for occupancy provided by the contractor or architect of a law school building project.

(d) A letter from the University president authorizing the hiring of a new faculty member.

(e) A letter from the dean verifying that offers have been made and accepted, accompanied by the copies of the faculty resumes.

(f) A copy of a written collection development plan for the Law Library accompanied by the minutes of the faculty meeting where the plan was adopted or accepted.

(g) Recent bar admissions data published or certified by the appropriate bar admissions authority.

(d) There shall be no right of appearance before the Committee in connection with reconsideration.

RULE 6. Council Consideration of Recommendation of Accreditation Committee.

(a) In those circumstances in which the Council takes final action on an Accreditation Committee recommendation (e.g., recommendations under Standards 102, 103, 105, 307, and 802, and Rule 14), the law school has a right of appearance before the Council.

(b) In considering the recommendation of the Committee, the Council shall adopt the Accreditation Committee's findings of fact unless the Council determines the findings of fact to be unsupported by substantial evidence on the record.

(c) The Council may adopt or modify the Accreditation Committee's recommendation, or it may refer the matter back to the Committee for further consideration.

(d) Council consideration of the Committee's recommendation shall, subject to sections (c), (e) and (f), be based on the following record:

(1) The record before the Committee at the time of the Committee's decision.

(2) The Committee Action Letter.

(3) The school's appearance before the Council, if any.

(e) The Council will not accept new evidence submitted by the school except upon a two-thirds vote of the Council based on findings that:

(1) The new evidence was not presented to the Accreditation Committee, and

(2) The new evidence could not reasonably have been presented, and

(3) A reference back to the Accreditation Committee to consider the new evidence would, under the circumstances, present a serious hardship to the school.

(f) In addition to the requirement of (e) above, the evidence may be received by the Council only if the evidence is:

(1) Submitted at least 14 days in advance of the Council meeting, and

(2) Appropriately verified at the time of submission.

(g) Examples of appropriate verification include (this is not an exclusive list):

(1) For a publicly supported law school, a copy of legislation verifying that the state legislature has included funding for a law school building project in a recently passed appropriations bill.

(2) A letter from a foundation officer verifying that funds have been deposited to the law school's account.

(3) A certificate of completion or occupancy issued by the appropriate governmental body, or other evidence of readiness for occupancy provided by the contractor or architect of a law school building project.

(4) A letter from the University president authorizing the hiring of a new faculty member.

(5) A letter from the dean verifying that offers have been' made and accepted, accompanied by the copies of the faculty resumes.

(6) A copy of a written collection development plan for the Law Library accompanied by the minutes of the faculty meeting where the plan was adopted or accepted.

(7) Recent bar admissions data published or certified by the appropriate bar admissions authority.

RULE 7. Council Consideration of Appeal from Accreditation Committee Action Letter.

(a) A school may take an appeal from the Accreditation Committee Action Letter by filing a written appeal with 30 days after the date of the Accreditation Committee Letter. If the school has requested Accreditation Committee reconsideration, then the 30–day time period begins to run from the date of the Action Letter containing the Committee's decision on reconsideration. If the Accreditation Committee Chair denies the request for reconsideration, the 30–day time period begins to run from the date of the letter of denial.

(b) The Council shall consider the appeal at its next regularly scheduled meeting, if feasible.

(c) The Council may affirm or modify the Accreditation Committee decision, or it may refer the matter back to the Committee for further consideration.

(d) In considering the Appeal from the Accreditation Committee action, the Council shall adopt the Accreditation Committee's findings of fact, unless the Council determines that the findings of fact are unsupported by substantial evidence on the record.

(e) The record upon which the law school may base its appeal shall consist of the following:

(1) The record before the Committee at the time of the Committee's decision.

(2) The Committee Action Letter.

(3) The Committee response to the appeal, if any.

(4) The law school's written appeal. The written appeal may not contain, nor may it refer to, any evidence that was not in the record before the Committee at the time of its action.

(f) There shall be no right of appearance before the Council in connection with the appeal.

HOUSE OF DELEGATES CONSTITUTION AND BYLAWS, § 45.9. Law School Accreditation.

(a) A Report of an action of the Council of the Section of Legal Education and Admissions to the Bar granting provisional or full approval to a law school or withdrawing, suspending or terminating approval of a law school shall comply with the provisions of this Article and be considered in the same manner as other reports containing recommendations, except that a representative of the school shall have the privilege of the floor with time limitations equal to those of the representative of the Section presenting the report but without a vote. The House shall vote either to agree with the action of the Council or refer it back to the Council for reconsideration based on reasons specified by the House. An action granting provisional or full approval may be referred back to the Council a maximum of two times. The action of the Council after the second referral shall be final. An action withdrawing, suspending or terminating approval may be referred back to the Council one time. The action of the Council after referral shall be final.

(b) The Council of the Section of Legal Education and Admissions to the Bar shall advise the House of an action denying provisional or full approval to a law school. No action of the House is required unless the law school appeals the action pursuant to Section 45.9(c).

(c) An appeal to the House of Delegates from an action of the Council of the Section of Legal Education and Admissions to the Bar denying provisional or full approval to a law school or withdrawing, suspending or terminating approval of a law school

shall be considered in accordance with the following procedure:

(1) Notice of the appeal must be delivered to the Secretary of the Association at the ABA offices within 30 days after receipt of notification by the Section of the action of its Council;

(2) The Section shall deliver to the Secretary a report with recommendations stating its action and the reasons therefor, within 15 days of the date notice of the appeal is delivered to the Secretary;

(3) The school shall be provided with a copy of the Section's report and may file a response, provided that such response must be delivered to the Secretary within 30 days after receipt of the report;

(4) The Chair of the House shall include the matter on the calendar at the meeting of the House following filing, or the expiration of the time for filing, the response provided for in subparagraph (3); and

(5) All these materials shall be made available to the delegates prior to the meeting at which the appeal will be considered.

During any consideration of such a matter by the House, a representative of the school shall have the privilege of the floor with time limitations equal to those of the representative of the Section but without a vote. The House shall vote either to agree with the action or refer it back to the Council for reconsideration based on reasons specified by the House. An action denying provisional or full approval may be referred back to the Council a maximum of two times. The action of the Council following the second referral shall be final. An action withdrawing, suspending or terminating approval may be referred back to the Council one time. The

action of the Council following the referral shall be final.