**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SHELL GULF OF MEXICO INC.; SHELL
OFFSHORE INC.,

*Plaintiffs-Appellees*,

v.

CENTER FOR BIOLOGICAL
DIVERSITY, INC; REDOIL, INC.;
ALASKA WILDERNESS LEAGUE;
NATURAL RESOURCES DEFENSE
COUNCIL, INC.; NORTHERN ALASKA
ENVIRONMENTAL CENTER; PACIFIC
ENVIRONMENT AND RESOURCES
CENTER; THE WILDERNESS SOCIETY;
OCEAN CONSERVANCY, INC.;
OCEANA, INC.; GREENPEACE, INC.;
SIERRA CLUB; NATIONAL AUDUBON
SOCIETY, INC.,

*Defendants-Appellants*.

No. 13-35835

D.C. No.
3:12-CV-00048-
RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, Chief District Judge, Presiding

Argued and Submitted
August 13, 2014—Anchorage, Alaska

Filed November 12, 2014

Before: Jerome Farris, Dorothy W. Nelson, and
Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge D.W. Nelson

## SUMMARY[*]

### Case or Controversy

The panel reversed the district court's order denying environmental groups' motion to dismiss, due to lack of a case or controversy under Article III of the U.S. Constitution, a Declaratory Judgment Act lawsuit filed by Shell Gulf of Mexico, Inc., seeking a declaration that the federal Bureau of Safety and Environmental Enforcement's approval of two oil spill response plans, required by the Oil Pollution Act, for Alaska's Beaufort and Chukchi Seas did not violate the Administrative Procedure Act.

The panel held that Shell's lawsuit ran afoul of Article III's case or controversy requirement because Shell did not have legal interests adverse to the Bureau under the Administrative Procedure Act. The panel held that Shell may not file suit solely to determine who would prevail in a hypothetical suit between the environmental groups and the Bureau.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Michael E. Wall (argued) and Jennifer A. Sorenson, Natural Resources Defense Council, San Francisco, California; Steven A. Hirsch, Rachael E. Meny, and Justina Sessions, Keker & Van Nest LLP, San Francisco, California; George E. Hays, Law Office of George E. Hays, San Francisco, California, for Defendants-Appellants.

Kyle W. Parker, Crowell & Moring LLP, Anchorage, Alaska; Kathleen M. Sullivan (argued), William B. Adams, and David S. Mader, Quinn Emanuel Urquhart & Sullivan LLP, New York, New York, for Plaintiffs-Appellees.

## OPINION

D.W. NELSON, Senior Circuit Judge:

The Beaufort and Chukchi Seas lie on Alaska's Arctic coast. This area contains a bountiful ecosystem that supports a wide array of life, but it is also rich in natural resources, specifically, oil and gas. Shell Gulf of Mexico, Inc. and Shell Offshore, Inc. (collectively Shell) have invested heavily in the exploration and development of oil and gas resources in the Beaufort and Chukchi Seas.

To carry out its operations, Shell sought and obtained approval from the Bureau of Safety and Environmental Enforcement (the Bureau) of two oil spill response plans required by the Oil Pollution Act. Shortly after obtaining approval, Shell filed a lawsuit under the Declaratory Judgment Act against several environmental organizations, seeking a declaration that the Bureau's approval did not

violate the Administrative Procedures Act (APA). Shell claimed that it needed a swift determination of the legality of the approval so it could conduct exploratory drilling without worrying that the environmental groups would seek to overturn the Bureau's approval of the spill response plans.

Shell's lawsuit represents a novel litigation strategy, whereby the beneficiary of agency action seeks to confirm its lawfulness by suing those who it believes are likely to challenge it. We must decide whether this strategy runs afoul of Article III's case or controversy requirement. We hold that it does. Shell does not have legal interests adverse to the Bureau under the APA, and it may not file suit solely to determine who would prevail in a hypothetical suit between the environmental groups and the Bureau. Consequently, we lack jurisdiction.

## I. Background

Many environmental organizations and citizen activists, including the defendants in this case, vehemently oppose Shell's Arctic oil and gas exploration activities. In addition to making public statements condemning Shell's plans, several organizations have filed lawsuits challenging regulatory approval of Shell's activities. Some of these organizations have proclaimed litigation to be a particularly effective tool for achieving their goal of stopping oil and gas exploration in the Arctic, and have stated their intentions to continue resisting Shell's plans in court.

A recent Arctic drilling dispute concerns Shell's compliance with the Oil Pollution Act, 33 U.S.C. § 1321(j). Under the Oil Pollution Act, Shell must file an oil spill response plan with the Bureau and obtain the Bureau's

approval for that plan prior to handling, storing, or transporting oil. *See id.* § 1321(j)(5)(F). Shell filed oil spill response plans with the Bureau for its operations in the Beaufort and Chukchi Seas, which the Bureau approved.

Weeks after obtaining the Bureau's approval, Shell filed a lawsuit against the environmental groups seeking a declaration that the Bureau's approval did not violate the APA. In its complaint, Shell alleged that the environmental groups were engaged in an ongoing campaign to prevent Shell from drilling for oil in the Arctic, and that some of the environmental groups had threatened to bring litigation challenging the Bureau's approval of the oil spill response plans. Shell alleged that the environmental groups' history of opposing Shell's activities through litigation, coupled with their public criticism, made it virtually certain that they would file litigation challenging the Bureau's approval. Shell asserted that it needed to accelerate resolution of the allegedly inevitable challenge to the Bureau's action in order to protect its investments and conduct exploratory drilling without the threat of judicial intervention.

The environmental groups moved to dismiss Shell's complaint, arguing, *inter alia*, that Shell's lawsuit did not satisfy Article III's case or controversy requirement. The district court denied the motion to dismiss. Eventually, some, but not all, of the environmental groups filed a lawsuit challenging the Bureau's approval of Shell's oil spill response plans. *See Alaska Wilderness League v. Jewell*, No. 13-35866 (9th Cir. filed Sept. 17, 2013).[1] This case was consolidated with the case against the Bureau, and the district

---

[1] Defendants Northern Alaska Environmental Center and The Wilderness Society are not parties to the lawsuit against the Bureau.

court entered summary judgment against the environmental groups. The environmental groups now appeal the district court's denial of their motion to dismiss.

## II. Legal Standard

We review the existence of subject matter jurisdiction de novo. *United States v. Peninsula Commc'ns, Inc.*, 287 F.3d 832, 836 (9th Cir. 2002).

## III. Discussion

The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). This statute does not create new substantive rights, but merely expands the remedies available in federal courts. *Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011). Congress created this remedy, in part, to allow potential defendants to file preemptive litigation to determine whether they have any legal obligations to their potential adversaries. *Seattle Audubon Soc. v. Mosely*, 80 F.3d 1401, 1405 (9th Cir. 1996). Filing a preemptive declaratory judgment action benefits potential defendants by relieving them "from the Damoclean threat of impending litigation which a harassing adversary might brandish[.]" *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990) (quoting *Societe de Conditionnement v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir.1981)).

While the Declaratory Judgment Act therefore created a new procedural mechanism for removing the threat of impending litigation, it did not expand the jurisdiction of

federal courts. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). In particular, a federal court may only grant a declaratory judgment in "controversies which are such in the constitutional sense." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). To determine whether a declaratory judgment action presents a justiciable case or controversy, courts consider "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Shell contends that this case is justiciable because the parties have adverse legal interests and have been mired in a substantial, real, and immediate controversy over the lawfulness of its Arctic oil and gas explorations. Shell points out that it brought this lawsuit to solve the precise problem the Declaratory Judgment Act is meant to address. Shell asserts that it needs a quick resolution of any challenge to the Bureau's approval before continuing its exploratory drilling, and that in the absence of a preemptive lawsuit, it fears the environmental groups would wait until the eve of the drilling season to file litigation at the most inconvenient moment. Shell further claims that adverse legal interests are present in this case because Shell and the environmental groups have opposing legal positions regarding the lawfulness of the Bureau's approval of Shell's oil spill response plans, and because Shell would suffer economic harm if the environmental groups' view prevailed in court.

We need not address whether there is a substantial controversy present in this case, because we hold that Shell and the environmental groups do not have "adverse legal

interests." *Md. Cas. Co.*, 312 U.S. at 273. To determine whether the parties to a declaratory judgment action have adverse legal interests, we first identify the law underlying the request for a declaratory judgment. *Mylan Pharm., Inc. v. Thompson*, 268 F.3d 1323, 1330 (Fed. Cir. 2001); *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990) ("A party's legal interest must relate to an actual 'claim arising under federal law that another asserts against him[.]'" (quoting *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir.1984))). It is necessary to first examine the underlying law because the Declaratory Judgment Act only creates new remedies, and therefore, the adverse legal interests required by Article III must be created by the authority governing the asserted controversy between the parties. When identifying the adverse legal interests arising from the law underlying the request for declaratory relief, courts examine both the persons who can assert rights under that law and those who have obligations under it. *See Collin Cnty.*, 915 F.2d at 171 ("Since it is the underlying cause of action of the defendant against the plaintiff that is actually litigated in a declaratory judgment action, a party bringing a declaratory judgment action must have been a proper party had the defendant brought suit on the underlying cause of action.").

The law underlying Shell's request for a declaratory judgment is the APA, and we therefore consider the rights and obligations created by that law. The APA allows a person "aggrieved" by agency action to seek judicial review. 5 U.S.C. § 702. Actions under the APA may be brought only against federal agencies. *City of Rohnert Park v. Harris*, 601 F.2d 1040, 1048 (9th Cir. 1979). A claim under the APA cannot be asserted against a private party. *W. State Univ. of*

*S. Cal. v. Am. Bar Ass'n*, 301 F. Supp. 2d 1129, 1133 (C.D. Cal. 2004). Thus, with respect to declaratory judgment claims arising out of the APA, the relevant "adverse legal interests" are held by a federal agency and a person aggrieved by that agency's action.

Turning to the facts before us, it follows that the only entities with adverse legal interests are the Bureau and the environmental groups. The environmental groups were "aggrieved" by the approval of Shell's oil spill response plans, and the Bureau is the federal agency responsible for their approval. Since the APA therefore allows the environmental groups to file suit against the Bureau, adverse legal interests exist between those parties. Shell, by contrast, does not have legal interests under the APA that are adverse to either the Bureau or the environmental groups. Because its plans were approved, Shell was not "aggrieved" by the Bureau's actions. Moreover, since Shell is not a federal agency, it cannot possibly have any legal obligations under the APA to the environmental groups. Put simply, the Bureau lies at the center of the underlying controversy and is the locus of the adverse legal interests created by the APA. Without its participation, no case or controversy can exist.

Indeed, since it is the Bureau, and not Shell, that can be sued under the APA, it would be odd to conclude that a case or controversy exists merely because Shell seeks to know who would prevail if the environmental groups asserted an APA claim against the Bureau. Were we to conclude that jurisdiction exists, our holding would create several unusual consequences, two of which are particularly noteworthy. First, it would allow a district court to declare the Bureau's actions unlawful under the APA in a judgment that is not binding on the Bureau itself. After all, the Bureau need not

participate in this lawsuit, and it would therefore not be bound by any judgment. *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008). Thus, a district court entertaining Shell's lawsuit would be potentially unable to enter a judgment resolving the very question Shell seeks to litigate. Second, absent agency intervention, such a lawsuit would allow the lawfulness of agency action to be adjudicated without hearing the agency's own justification for its actions. We conclude, therefore, that it would be unwise to exercise jurisdiction over a dispute concerning agency action while potentially omitting the critically important perspective of the agency itself.

Shell emphasizes the sincerity of its legal disagreement with the environmental groups and the substantial economic effects it would suffer from a judgment against the Bureau, but these alone do not create a justiciable case or controversy. It is axiomatic that differing views of the law are not enough to satisfy Article III. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) ("The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements." (quoting *Diamond v. Charles*, 476 U.S. 54, 62 (1986))). Moreover, Shell's economic interest in the outcome of a lawsuit between the Bureau and the environmental groups is not a legal interest merely because it relates to a lawsuit. "A party's legal interest must relate to an actual claim arising under federal law that another asserts *against him*." *Collin Cnty.*, 915 F.2d at 171 (internal quotation marks omitted) (emphasis added). Lawsuits affect a vast range of persons, and an Article III case or controversy does not exist wherever an individual possibly, probably, or even certainly affected by litigation asks a federal court to resolve a legal question. Thus, it is not enough for a declaratory judgment plaintiff to assert, as Shell does here, a practical interest in the outcome of a lawsuit

between other parties.    Instead, Article III requires the existence of adverse legal interests arising from a legal claim, and that is absent from this case.

The Fifth Circuit has also concluded that a practical interest in the outcome of a lawsuit is not necessarily a legal interest capable of satisfying the case or controversy requirement.    In *Collin County v. HAVEN*, HAVEN, a homeowner's organization, stated publicly that it intended to file a lawsuit challenging the Federal Highway Administration's approval of an environmental impact statement (EIS) drafted for a proposed state highway. 915 F.2d at 172.  Fearing delay in the highway's construction, Collin County sued HAVEN under the Declaratory Judgment Act, seeking a declaration that the EIS was sufficient as a matter of law.    The Fifth Circuit held that there was no justiciable controversy because HAVEN "could not have sued Collin County or any of the other plaintiffs over the sufficiency of the EIS."    *Id.* at 171.    The Fifth Circuit acknowledged that the county had strong practical interests in the completion of the highway, but reasoned Collin County had no legal interests adverse to HAVEN because it faced "no actual liability for any deficiency in the EIS."  *Id.*  Like the plaintiffs in *Collin County*, Shell merely has a practical interest in the outcome of a lawsuit between the Bureau and the environmental groups, and that is not enough to satisfy the case or controversy requirement.[2]

---

[2] Shell contends that *Collin County* is distinguishable because Shell was able to intervene in the APA action that was eventually brought against the Bureau, whereas the plaintiffs in *Collin County* had no right to intervene.  *See Collin County*, 915 F.2d at 171.  In its discussion of whether one of the plaintiffs could have been added to an affirmative suit brought by HAVEN, however, the Fifth Circuit made clear that its decision rested on the premise that the plaintiffs "could not have been

Thus, because no adverse legal interests exist between the environmental groups and Shell, this case is not justiciable, and we therefore lack jurisdiction.  We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

sued directly on account of any alleged deficiency in the final EIS." *Id.* Thus, the holding in *Collin County* did not rest on the plaintiffs' inability to intervene, but on the lack of any claim against them.